**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RV SKINCARE BRANDS LLC,

                     Plaintiff,

      - v -

DIGBY INVESTMENTS LIMITED, and
the Internet Domain Names GetReviveSkin.com, et al.,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.

**COMPLAINT**

RV Skincare Brands LLC, by and through its attorneys, Wolf, Greenfield & Sacks, P.C., complains and alleges against defendant Digby Investments Limited as follows:

**NATURE OF THE ACTION**

1.    Plaintiff RV Skincare Brands LLC ("Ré Vive") seeks injunctive relief and damages for acts of trademark infringement, cyberpiracy, cybersquatting, false designation of origin, false advertising, and unfair competition engaged in by Defendant Digby Investments Limited ("Defendant Digby"), in violation of the laws of the United States and the State of New York.

2.    Defendant Digby's offending acts for which Ré Vive seeks relief are facilitated through a byzantine web of internet domain names.

3.    Ré Vive brings this action for *in rem* cybersquatting under the Federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), against the Defendant internet domain names (the "Domain Name Defendants") used to facilitate Defendant Digby's offending acts.

## THE PARTIES

4.      RV Skincare Brands LLC ("Ré Vive"), is a limited liability company organized and existing under the laws of the State of Delaware, with a place of business located at 3500 S. Dupont Highway, Dover, DE 19901.  Ré Vive also maintains a principal place of business at 20 West 22nd Street, Suite 1405, New York, NY 10010, which is located in the Southern District of New York.

5.      Domain Name Defendant getreviveskin.com is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on October 27, 2017.  A copy of the domain name registration record for Domain Name Defendant getreviveskin.com is attached as Exhibit A-1.

6.      Domain Name Defendant reviveantiagingcream.org is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on February 14, 2018.  A copy of the domain name registration record for Domain Name Defendant reviveantiagingcream.org is attached as Exhibit A-2.

7.      Domain Name Defendant facialrevive.net is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on November 17, 2016.  A copy of the domain name registration record for Domain Name Defendant facialrevive.net is attached as Exhibit A-3.

8.      Domain Name Defendant rerevivecream.org is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on November 23, 2015.  A copy of the domain name registration record for Domain Name Defendant rerevivecream.org is attached as Exhibit A-4.

9.      Domain Name Defendant radiantrevivecream.org is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on October 9, 2017.   A copy of the domain name registration record for Domain Name Defendant radiantrevivecream.org is attached as Exhibit A-5.

10.      Domain Name Defendant reviveantiagingcream.net is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on December 28, 2017.   A copy of the domain name registration record for Domain Name Defendant reviveantiagingcream.net is attached as Exhibit A-6.

11.      Domain Name Defendant reviverxtry.com is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on October 8, 2014.  A copy of the domain name registration record for Domain Name Defendant reviverxtry.com is attached as Exhibit A-7.

12.      Domain Name Defendant reviveeye.org is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on August 17, 2016.  A copy of the domain name registration record for Domain Name Defendant reviveeye.org is attached as Exhibit A-8.

13.      Domain Name Defendant revivedyouth.net is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on December 7, 2016.  A copy of the domain name registration record for Domain Name Defendant revivedyouth.net is attached as Exhibit A-9.

14.      Domain Name Defendant radiantrevives.net is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on

October 9, 2017.  A copy of the domain name registration record for Domain Name Defendant radiantrevives.net is attached as Exhibit A-10.

15.     Domain Name Defendant lereviva.com is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on November 28, 2017.  A copy of the domain name registration record for Domain Name Defendant lereviva.com is attached as Exhibit A-11.

16.     Domain Name Defendant tryradiantrevivetoday.com is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on August 11, 2017.  A copy of the domain name registration record for Domain Name Defendant tryradiantrevivetoday.com is attached as Exhibit A-12.

17.     Domain Name Defendant facts4health.com/revive-anti-aging-facial-cream is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on July 22, 2004.  A copy of the domain name registration  record for Domain Name Defendant facts4health.com/revive-anti-aging-facial cream is attached as Exhibit A-13.

18.     Domain Name Defendant wellness4healthy.com/revive-facial-cream is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on June 18, 2017.  A copy of the domain name registration record for Domain Name Defendant wellness4healthy.com/revive-facial-cream is attached as Exhibit A-14.

19.     Domain Name Defendant getfreebs.com is an Internet domain name, which according to records in the WHOIS database of domain name registrations, was registered on February 8, 2009.  A copy of the domain name registration record for Domain Name Defendant wellness4healthy.com/revive-facial-cream is attached as Exhibit A-15.

20.     Upon information and belief, Defendant Digby Investments Limited is a company organized and existing under the laws of Ireland, was established on May 31, 2016, and maintains a place of business at Unit 113, Citygate Business Centre, Hills Industrial Estate, Lower Lucan Road, Lucan, Co. Dublin, Ireland.

21.     Upon information and belief, Defendant Digby's principals include Ms. Ivy Lock and Mr. Fergal O'Neill, who also appear to be named directors of at least 10 other companies organized and existing under the laws of Ireland, other than Defendant Digby.

### JURISDICTION AND VENUE

22.     This Court has jurisdiction over the subject matter of this action pursuant to Sections 32 and 43 of the Lanham Act (15 U.S.C. §§ 1114 and 1125), and 28 U.S.C. §§ 1331, 1332, and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Ré Vive's claims are predicated upon the Trademark Act of 1946, as amended, ("The Lanham Act") 15 U.S.C. § 1051 *et seq*., and substantial and related claims under the statutory and common law of the State of New York.

23.     Upon information and belief, and as a result of at least the facts set forth in ¶¶24-30 below, Defendants are subject to personal jurisdiction of this Court because they transact business within this District, and expect or should expect their acts to have legal consequences within New York and this District.

24.     Defendant Digby promotes, advertises, distributes, offers for sale, and/or sells skincare products and/or samples of skincare products through a number of websites, including the Defendant Domain Names, as described in detail *infra* in ¶¶60-95.

25.     Defendant Digby's acts, identified in ¶24 *supra*, are the acts which give rise to the present action and are the subject of this Complaint.

26.     The websites through which Defendant Digby promotes, advertises, distributes, offers for sale, and/or sells skincare products and/or samples of skincare products, as identified in ¶24 *supra*, are freely accessible to consumers located within New York and this District.

27.     As a result of Defendant Digby's acts identified in ¶24 *supra*, consumers located within New York and this District have purchased products from Defendant through websites accessible from New York and this District.

28.     Receipts for orders placed with Defendant Digby through various websites, including websites located under the Defendant Domain Names, evidencing purchases such as those identified in ¶27 *supra* and the availability of Defendant Digby's products to consumers in New York and this District as described in ¶26 *supra*, are attached hereto as Exhibit B.

29.     On information and belief, Defendant Digby has otherwise distributed, offered for sale, and/or sold skincare products or samples of skincare products to consumers in New York and this District through websites freely accessible from New York and this District.

30.     As of August 1, 2018, Defendant Digby operated commercially in the United States, and solicited business in New York and this District through a number of registered agents and corporate entities, including but not limited to the following: Domains By Proxy, LLC, with an address at 14455 North Hayden Road, Scottsdale, AZ 85260; Whois Agent, Domain Protection Services, Inc., PO Box 1769, Denver, CO 80201; Pinpoint Electronic Marketing LLC, with an address at 405 South Dale Mabry Highway, #101, Tampa, FL 33609; Wellness Advancement LLC, with an address of 13506 Summerport Village Parkway, #394, Windermere, FL 34786.

31.     This Court has *in rem* jurisdiction over the Defendant Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A).   *In rem* jurisdiction is appropriate under 15 U.S.C. §

1125(d)(2)(A)(i)(I) because the listed registrants of the Defendant Domain Names are privacy services and, therefore, Ré Vive cannot find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

32.    The Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(3) and (4), states that the *in rem* action, jurisdiction, and remedies created by the statute are "in addition to any other civil action or remedy otherwise applicable" and "in addition to any other jurisdiction that otherwise exists, whether *in rem* or *in personam*."

33.    The Court has *in personam* jurisdiction over Defendant Digby because Ré Vive's claims against Defendant Digby for counterfeiting and trademark infringement are based on Defendant Digby's misuse of Ré Vive's trademarks to market and sell Defendant Digby's counterfeit Ré Vive products, Defendant Digby's sale and shipment of such counterfeit products to consumers in this District, and, on information and belief, Defendant Digby's use of instrumentalities in this District to promote and sell counterfeit Ré Vive products including through the use of various domain names, as described in detail below.

34.    Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, in that Defendant Digby is subject to personal jurisdiction in this District, and the events and omissions giving rise to Ré Vive's claims occurred and continue to occur in this District, as well as elsewhere in the United States.

35.    Joinder of the Defendant Domain Names and Defendant Digby is proper under Fed. R. Civ. P. 20(a)(2) in that the claims set forth herein arise out of the same series of transactions, and the same questions of law are common to all of the Defendants.

## PLAINTIFF AND PLAINTIFF'S TRADEMARKS

36.     Ré Vive is a leader in the development, manufacture, and marketing of high end cosmetics and skincare products, of which exemplary images are shown below:



37.     On December 1, 2017, Ré Vive became the successor in interest to the trademarks with U.S. Reg. Nos. 2,539,403; 2,875,712; and 3,787,890 (collectively the "Ré Vive Trademarks"). Ré Vive's immediate predecessor in interest to the Ré Vive Trademarks was Shiseido Americas Corporation ("Shiseido").  The original owner of the Ré Vive Trademarks was Bays-Brown Dermatologics, Inc. ("Bays-Brown") a cosmetics and dermatological research company founded in Kentucky by Dr. Gregory Bays Brown in 1992.  Dr. Brown established the Ré Vive brand in 1997.

38.     Bays-Brown registered the trademark RÉ VIVE (U.S. Reg. No. 2,539,403) in the United States on February 19, 2002.

39.     Bays-Brown registered the trademark RÉ VIVE. GET THE GLOW (U.S. Reg. No. 2,875,712) in the United States on August 17, 2004.

40.     Bays-Brown registered the trademark ACNE REPARATIF RÉ VIVE (U.S. Reg. No. 3,787,890) in the United States on May 11, 2010.

41.     Ré Vive and its predecessors in interest to the Ré Vive Trademarks have used the trademark RÉ VIVE in the United States since at least as early as March 1997 and the related trade mark RÉ VIVE. GET THE GLOW since at least as early as April 2004.  Ré Vive has used each of these trademarks in connection with non-medicated and medicated skin products, namely creams, lotions, gels, toners, cleaners, and peels.

42.     Ré Vive and its predecessors in interest to Ré Vive Trademarks have also used, and Ré Vive continues to use, the trademark ACNE REPARATIF RÉ VIVE since at least as early as August 30, 2008 in connection with gels and other non-medicated acne treatment products.

43.     Ré Vive is the owner of the domain name www.reviveskincare.com, registered on November 29, 2001.

44.     Ré Vive, like its predecessors in interest, has made substantial investments in developing luxury skincare products, including but not limited to moisturizing renewal creams, neck renewal creams, revitalizing eye masks, firming eye creams, hydrating creams, firming moisture creams offering sunscreen protection, eye renewal serums, cellular protection creams, and skin treatments ("collectively the Ré Vive Products").

45.     In 1997, Ré Vive's founder, Dr. Brown, established Bays-Brown Dermatologics, Inc. ("Bays-Brown") to enable the research, development, and marketing of specialized skincare products.  Before founding Bays-Brown, Dr. Brown had devoted the majority of his career as a plastic reconstructive surgeon to the treatment of burn victims.  As part of his continuous efforts to improve the level of care he could offer to his patients, Dr. Brown researched and succeeded

in innovating in the area of post-operative care for damaged skin.  In particular, Dr. Brown focused on developing methods of post-operative care that could accelerate healing after invasive reconstructive surgery, as well as finding ways to either minimize the need for invasive surgery or to complement invasive treatment with non-invasive treatment methods.

46.     Through his research, Dr. Brown discovered the efficacy of certain ingredients in accelerating the healing of burn patients and observed that these ingredients offered significant restorative benefits to healthy skin as well.  Significantly, the ingredients which Dr. Brown identified would often delay—or obviate altogether—his patients' need or desire for invasive cosmetic surgery.  Having developed a range of products that Dr. Brown offered significant benefits to his patients, Dr. Brown founded Bays-Brown in 1997 to bring these products to market.  Today, more than twenty years after Dr. Brown founded his company, Bays-Brown's flagship product Ré Vive is a famous brand that has gained national recognition, earned consumers' trust, and enjoyed significant commercial success, all of which are premised on a foundation of unparalleled quality and efficacy.

47.     From the launch of the first Ré Vive Products in 1997, Ré Vive and its predecessors in interest have made substantial investments in providing the consumer with skincare products of unparalleled quality.  Over the years, the Ré Vive Trademarks have become associated in the public mind as identifying Ré Vive as the source of the Ré Vive Products.

48.     Ré Vive has maintained consistently and continuously the reputation for quality associated with the Ré Vive Trademarks.  Strict quality control standards are imposed in the manufacture of all the products bearing the Ré Vive Trademarks.  Ré Vive's imposition of such standards has resulted in widespread and favorable public acceptance among consumers for products bearing the Ré Vive Trademarks.

49.     To ensure the quality and authenticity of the Ré Vive Products that ultimately reach the consumer—and to protect the reputation of unparalleled quality Ré Vive Products enjoy—Ré Vive offers its Ré Vive Products for sale to consumers exclusively through a limited number of authorized retailers, specifically, Saks Fifth Avenue, Barney's, Nordstrom, Neiman Marcus, and Blue Mercury Spas (e-commerce and retail stores and spas) (collectively the "Authorized Sellers").   Images of product packaging bearing the Ré Vive Trademarks and images taken from Ré Vive's and its Authorized Sellers' websites are attached as Exhibit C and excerpted below.   These images show that the Ré Vive Trademarks feature prominently on product packaging and on the websites through which the Ré Vive Products are offered.

Ré Vive Product Packaging (source: https://reviveskincare.com/collections/best-sellers)



50.     The Ré Vive Products have consistently enjoyed significant commercial success and consumer confidence, as evidenced for example by numerous favorable consumer reviews directed to Ré Vive Products (*see* Exhibit D), as well as the absence to date of any complaints directed to genuine Ré Vive Products addressed to Ré Vive or its predecessors in interest, or alternatively to The Better Business Bureau or other consumer protection agencies.

51.     Further, Ré Vive Trademarks and Products have been featured in unsolicited media coverage, including various print and online articles in well-known fashion and beauty publications and online sources for beauty tips such as Vogue, WWD, Allure, InStyle, HuffPost

Style, and www.byrdie.com. A representative number of articles and press releases featuring Ré Vive's Ré Vive Trademarks are attached hereto as Exhibit E. As a result of Ré Vive's extensive use of the Ré Vive Trademarks, customers in the United States are likely to associate the Ré Vive Trademarks with Ré Vive and Ré Vive's Ré Vive brand.

52.     As a result of the foregoing, the Ré Vive Trademarks are distinctive and well-known marks, denoting quality, reliability, and value in the minds of the public. Further, Ré Vive has developed extremely valuable goodwill in its Ré Vive Products and Trademarks, which is indicative of high quality and origin associated exclusively with Ré Vive RV Skincare Brands LLC, as well as Ré Vive's Ré Vive brand.

53.     On February 19, 2002, the United States Patent and Trademark Office ("USPTO") granted to Ré Vive's predecessor in interest Bays-Brown Registration No. 2,539,403 on the Principal Register, for the mark RÉ VIVE for "non-medicated skin products, namely, creams, lotions, gels, toners, cleaners and peels" and "medicated skin products, namely creams, lotions, gels, toners, cleansers, and peels" in International Classes 3 and 5, respectively with a claim of first use of the mark on March 5, 1997 ("RÉ VIVE Mark"). A copy of the certificate of registration is attached at Exhibit F. In addition, the RÉ VIVE Mark was renewed on February 9, 2012 and is incontestable.

54.     On August 17, 2004, the USPTO granted to Ré Vive's predecessor in interest Bays-Brown Registration No. 2,875,712 on the Principal Register, for the mark RÉ VIVE. GET THE GLOW for "non-medicated skin products, namely, creams, lotions, gels, toners, cleaners and peels" with a claim of first use of the mark on April 2004 ("RÉ VIVE. GET THE GLOW Mark"). A copy of the certificate of registration is attached at Exhibit G. In addition, the RÉ VIVE. GET THE GLOW Mark was renewed on July 2, 2014 and is incontestable.

55.     On May 11, 2010, the USPTO issued to Ré Vive's predecessor in interest Bays-Brown Registration No. 3,787,890 on the Principal Register, for the mark RÉ VIVE ACNE REPARATIF (the "REPARATIF Mark") for "gels and non-medicated acne treatment" in International Class 3 with a claim of first use of the mark on August 30, 2008.  The USPTO accepted an amendment to the mark on May 24, 2016 and the current form of the registered mark is "ACNE REPARATIF RÉ VIVE."  A copy of the certificates of registration and amended registration are attached at Exhibit H.  A Declaration of Use and Incontestability was filed in connection with the REPARATIF Mark on February 18, 2016, and the REPARATIF Mark is incontestable.

56.     Pursuant to Sections 15 and 33(b) of the Trademark Act, registration of Ré Vive's RÉ VIVE Mark on the Principal Register is conclusive evidence that the RÉ VIVE Mark is valid, that Ré Vive is the owner of the mark, and that Ré Vive has the exclusive nationwide right to use the mark for the goods listed in the Certificate of Registration.

57.     Pursuant to Sections 7(b) and 33(a) of the Trademark Act, registration of Ré Vive's RÉ VIVE. GET THE GLOW Mark on the Principal Register is conclusive evidence that the RÉ VIVE. GET THE GLOW Mark is valid, that Ré Vive is the owner of the mark, and that Ré Vive has the exclusive nationwide right to use the mark for the goods listed in the Certificate of Registration.

58.     Registration of Ré Vive's Class 3 ACNE REPARATIF RÉ VIVE Mark on the Principal Register is conclusive evidence that the ACNE REPARATIF RÉ VIVE Mark is valid, that Ré Vive is the owner of the mark, and that Ré Vive has the exclusive nationwide right to use the mark for the goods listed in the Certificate of Registration.

59.     Ré Vive and its predecessors in interest have diligently and successfully enforced the Ré Vive Trademarks.  By way of example only, Ré Vive's predecessors in interest opposed the following U.S. trademark applications before the Trademark Trial and Appeal Board ("TTAB"):

a)      The application of James Hall Products/JGP, LLC to register the trademark REVIVE AND FLOURISH (U.S. App. No. 87/187,381) was opposed on June 13, 2017.  On September 14, 2017, the TTAB sustained Shiseido's opposition.

b)      The application of Vahia Krupa to register the trademark REVIVE REBUILD IGROW OILS NOURISHING OIL (U.S. App. No. 86/899,973) was opposed on March 31, 2017 by Shiseido.  The applicant amended its application to exclude all skin products, to settle the opposition.  The resulting registration coverage is limited to "cosmetic oils for eyebrows" only.

c)      The application of Benedict Enterprises, Inc. to register the trademark SKINCARE.REVIVED (U.S. App. No. 87/429,583) was opposed on September 26, 2017.  The application was withdrawn from the Trademark Register after the TTAB sustained Shiseido's opposition on January 4, 2018.

## DEFENDANTS' CONDUCT

60.     Upon information and belief, Defendant Digby began using the mark REVIVE and variations thereof, which are confusingly similar to Ré Vive Trademarks including the RÉ VIVE Mark, in connection with the distribution of skincare products, including purportedly "free" samples of skincare cream, at least as early as April 2018.

61.     In addition to the similarity of the marks, the packaging of Defendant Digby's products is confusingly similar to the packaging used by Plaintiff in connection with the Ré Vive

Trademarks. As can be seen in the images below (excerpted from Ré Vive's and Defendant Domain Name websites, of which printouts are attached hereto as Exhibits I and J), Defendant Digby's product packaging has a similar appearance and employs similar marks as Ré Vive's original Ré Vive Products.

| Ré Vive's Product Packaging (source: https://reviveskincare.com/collections/moisturizers and https://reviveskincare.com/collections/best-sellers | Representative Examples of Defendant's Product Packaging |
|---|---|
|  | <br>Source: http://reviveantiagingcream.net/ |
|  | <br>Source:<br>https://www.lereviva.com/kn1/index.php?affId=3C331A09&c2=1618&c3=5804805&c1=1743 |



Source: http://reviveantiagingcream.net/

62.     As can be seen above, the marks REVIVE and Le Réviva, which feature prominently on Defendant Digby's product packaging, are confusingly similar to the variations on the Ré Vive Trademarks, including for example the RÉ VIVE Mark.

63.     On information and belief, Defendant Digby has not sought to register in the United States any trademarks for any of its products and the purportedly free samples it offers and distributes, all of which bear insignia such as the mark REVIVE and slight variations that are confusingly similar to Ré Vive Trademarks.

64.     Ré Vive first became aware of Defendants' use of the mark REVIVE and variations thereof in April 2018.

65.     Upon information and belief, either directly or through one of its owners, officers, or employees, Defendant Digby registered the domain names "getreviveskin.com" on October 27, 2017; "reviveantiagingcream.org" on February 14, 2018; "facialrevive.net" on November 17, 2016; "rerevivecream.org" on November 23, 2015; "radiantrevivecream.org" on October 9, 2017; "reviveantiagingcream.net" on December 28, 2017; "reviverxtry.com" on October 8, 2014;

"reviveeye.org" on August 17, 2016; "revivedyouth.net" on December 7, 2016; "radiantrevives.net" on October 9, 2017.   Defendant Digby's use of the domain names it registered started after Ré Vive commenced use of Ré Vive Trademarks, including the RÉ VIVE Mark; after Ré Vive had registered its "reviveskincare.com" domain name; and after Ré Vive had applied to register the RÉ VIVE Mark and the other Ré Vive Trademarks with the United States Patent and Trademark Office.

66.     Upon information and belief, Defendant Digby used the domains identified in ¶65 *supra* for the purpose of marketing directly to consumers an array of products that resemble in branding and packaging trade dress the Ré Vive Products, including but not limited to products such as skin creams, lotions, gels, toners, cleaners, and peels.   For example, Defendant Digby's "facialrevive.net" domain name directed to a website that featured information about Defendant Digby's products branded "REVIVE" and described as skincare products, including "Facial Revive Serum."   A printout of the website content is attached hereto as Exhibit K (*see* below)



67.    For further example, Defendant "radiantrevivecream.org" domain name directed to a website that featured information about Defendant Digby's products branded "REVIVE" and described as skincare products, including "Radiant Revive."   A printout of the website content is attached hereto as Exhibit L and is excerpted below:



68.    For further example, the Defendant "reviveeye.org" domain name directed to a website that featured information about Defendant Digby's products branded "REVIVE" and described as skincare products, including "ReviveEye."   A printout of the website content is attached hereto as Exhibit M and is excerpted below:

Content excerpted from: http://reviveeye.org/



### Skincare For YOUNGER Looking EYES

If you would like to reduce signs of aging around your eyes, consider **Revive Eye** Advanced Eye Gel. This is an anti-aging cream specially formulated for the delicate dermal tissue surrounding the eyes. Treat wrinkles, dark circles and sagging skin for a refreshed new look with Revive Eye Gel.

Through the aging process, the eyes tend to reveal our age first. Puffiness, hyperpigmentation and crow's feet are the common issues. Stress, on-the-go dieting, UV exposure and sleepless nights can trigger these. Digital screen glare from phones, TV and Computers make this even worse. Help reverse aging with Revive Eye Gel.

69.     For further example, the Defendant "revivedyouth.net" domain name directed to a website that featured information about Defendant Digby's products branded "REVIVE" and described as skincare products, including "Revived."   A printout of the website content is attached hereto as Exhibit N and is excerpted below:

Content excerpted from: http://revivedyouth.net/



...rating And Firming Skincare

**Revived Youth –** Everyone wishes they could have perfect skin. Wearing make-up is the only way to hide dull, dry, blotchy and uneven skin. Not many are lucky enough to have pore-less, smooth, bright and wrinkle free skin, not even in their teens. What if you could have that flawless, porcelain skin that only seems possible on celebrities? *Revived Youth* Renewal Cream may be the answer.

Today, we are discussing solutions to reversing aging in our Revived Youth Cream Review. Discover how you can eliminate dark circles, fine lines and age spots with minutes a day. The key to stopping premature aging signs is no longer solely injections and surgery. This topical anti-aging formula can help you reclaim your youth. Order the Revived Youth Cream Free Trial now.

**Start Your Free Trial**

70.     For further example, Defendants' "radiantrevives.net" domain name directed to a website that featured information about Defendants' products branded "REVIVE" and described as skincare products, including "Radiant Revive."  A printout of the website content is attached hereto as Exhibit O and is excerpted below:

Content excerpted from:
https://www.waybackmachine.org/web/20171212094256/http://radiantrevives.net



## Repair And Release Cream Soothes Aging Skin

**Radiant Revive** – Most of your skin is made up of water and collagen. But, your skin is the most exposed part of your body. So, both of these elements are depleted over time. And, that's when the wrinkles begin to appear. But, Radiant Revive can replenish your skin with what it needs to stay healthy. Because, the Radiant Revive Repair and Release Cream uses ingredients that deliver whole collagen molecules to your skin. And, they surge moisture retention. So, you can rebuild healthy and youthful skin. Claim your risk free trial of Radiant Revive Repair & Release Cream and Bright Eye Serum now!

Radiant Revive is made with firming peptides. And, it uses active ingredients that trap moisture in your skin. So, you can strengthen and hydrate your skin all day long! Now, you won't believe the difference this can make for your dermal structure. Because, this break through formula can deliver clinically tested ingredients to your skin. And, with everyday application, you can watch your wrinkles and fine lines disappear in weeks! Now, you can try out the RadiantRevive Repair & Release Cream and Bright Eye Serum for just the cost of shipping upfront. Claim your risk free trial. Click the button below to get started.

71.     Ré Vive first became aware of the existence of the Defendant Domain Names through which Defendant Digby conduct its operations, described in ¶65 *supra*, in April 2018.

72.     By letter (referred to herein as "Ré Vive's Letter") dated April 23, 2018, Ré Vive objected to the Defendants' use of the mark REVIVE and other confusingly similar marks and product packaging, as well as Defendants' use of confusingly similar domain names such as

those identified in ¶65 *supra*.  Ré Vive stated that Defendants' continued use of the nearly identical mark REVIVE on goods held out to be virtually the same as Ré Vive's Ré Vive Products is likely to cause consumer confusion and mislead the public into believing that Defendants' REVIVE product is endorsed, sponsored by, or otherwise affiliated with Ré Vive. Ré Vive demanded that Defendants cease their use of REVIVE, and provide to Ré Vive an accounting of how much REVIVE product had been distributed or sold and how much was on hand, to effect an orderly removal from the market.  Ré Vive also demanded that Defendants cease their use of confusingly similar domain names such as those identified in ¶65 *supra*.

73.     Defendants never provided any  response to Ré Vive's Letter.

74.     On or about June 2018, shortly after Ré Vive sent Ré Vive's Letter, the domains identified in ¶65 appeared to have been rendered inactive.  However, new similarly confusing domain names that comprised portions of the Ré Vive Trademarks, including the words "revive" or "reviveskincare" appeared and remain active.  On information and belief, these domain names are operated by Defendants.

75.     Upon information and belief, either directly or through one of its owners, officers, employees, or affiliated companies, Defendants registered the domain names identified in ¶65, including "reviveantiagingcream.net" on December 28, 2017; "reviverxtry.com" on October 8, 2014 (updated on February 14, 2018); "reviveantiagingcream.org" on February 14, 2018; "reviveeye.org" on August 17, 2016; "rerevivecream.org" on November 23, 2015; "revivedyouth.net" on December 7, 2016; "facialrevive.net" on November 17, 2016; "radiantrevivecream.org" on October 9, 2017; and "radiantrevives.net" on October 9, 2017. Defendants' use of these "revive" formative domain names they registered and control started after Ré Vive had commenced use of Ré Vive Trademarks, including the RÉ VIVE Mark, after

Ré Vive had registered its "reviveskincare.com" domain name, after Ré Vive had applied to register the RÉ VIVE Mark and its other Ré Vive Trademarks with the USPTO.

76.     Upon information and belief, Defendants use the domain names identified in ¶65 *supra* for the purpose of continuing to market directly to consumers an array of products that resemble the Ré Vive Products including but not limited to skincare products such as anti-aging skin creams and products.

77.     For example, Defendants' "reviveantiagingcream.net" domain name currently directs to a website that features information about Defendant Digby's products branded "REVIVE" and are described as skincare products, including "Revive Anti-Aging Facial Cream."   A printout of the website content is attached hereto as   Exhibit P and is excerpted below:

Content excerpted from: http://reviveantiagingcream.net/



78.     For further example, Defendants' "facts4health.com/revive-anti-aging-facial-cream" domain name currently directs to a website that features information about Defendant

Digby's products branded "REVIVE" and are described as skincare products, including "Revive Anti-Aging Facial Cream."  A printout of the website content is attached hereto as Exhibit Q and is excerpted below:

Content excerpted from: http://www.facts4health.com/revive-anti-aging-facial-cream/



79.     For further example, Defendants' "wellness4healthy.com/revive-facial-cream" domain name currently directs to a website that features information about Defendant Digby's products branded "REVIVE" and are described as skincare products, including "Revive Anti-Aging Facial Cream."  A printout of the website content is attached hereto as Exhibit R and is excerpted below:

Content excerpted from: http://www.wellness4healthy.com/revive-facial-cream/



80.     For further example, Defendants' "reviverxtry.com" domain name currently directs to a website that features information about Defendant's products branded "REVIVE" and are described as skincare products, including "Revive RX."  A printout of the website content is attached hereto as Exhibit S and is excerpted below:

Content excerpted from: https://reviverxtry.com/



## Revive Rx

Product : Revive Rx

Offer : 1 Exclusive Bottle

Currently available in stock but running short.

*Click Here* To Claim Your Exclusive Bottle

## More about the Formula

Revive Rx anti aging cream has been specially prepared to visibly reduce the signs of aging which show-up on your skin. Its advanced formulation works at the cellular level and decelerates the natural skin aging process. The ingredients of Revive Rx help to increase the production of collagen, one among the essential proteins which maintain the elasticity of the skin. This cream can reduce the depth of wrinkles on your skin, thus decreasing their visibility. It also make the dark circles fade.



81.     For further example, Defendants' "getfreebs.com/re-revive-anti-aging-cream" domain name currently directs to a website that features information about Defendant Digby's products branded "REVIVE" and are described as skincare products, including "Revive Anti-Aging Facial Cream."   A printout of the website content is attached hereto as Exhibit T and is excerpted below:

> Content excerpted from: https://www.getfreebs.com/re-revive-anti-aging-cream/

26

**What Is Re Revive Anti Aging Cream?**



**Re Revive** is an anti aging cream that helps reverse the aging of the skin to give you younger looking skin. The manufacturer's of Rerevive Revitalizing Moisturizer have reported that the active ingredients in this anti wrinkle cream include Argirelene, Trylagen PCB, and Lipogard. These ingredients are blended using an advanced formula known to the expert makers. The creators designed this skin care cream in such a way that this can be the one-stop skin care for people who don't have time to apply multiple products in the morning. This product has clinically tested ingredients that have shown to help combat wrinkles and fine lines. The anti aging cream helps reverse skin aging by using its peptide-rich formula to boost the collagen and elastin levels in the skin tissue.

82.     Defendants continue to use the mark REVIVE and slight variations that are similar to the Ré Vive Trademarks through wholly incorporating these terms in domain names, including at least the domain names identified in ¶75.  By way of further example, the website identified in ¶75 with domain name "reviveantiagingcream.net" in at least July 2018 redirected consumers to a website bearing the similarly confusing domain name "lereviva.com" that prompts consumers to purchase and makes available for purchase a product named "LeRéviva," which is likewise confusingly similar to Ré Vive's Ré Vive Products and Trademarks.   An excerpt of the confusingly similar images displayed on the "lereviva.com" website is shown below:

Content excerpted from:
https://www.lereviva.com/kn1/index.php?affId=3C331A09&c2=1618&c3=5804805&c1=1743



83.     By way of further example, the domain name "radiantrevives.net" has redirected in at least the month of July 2018 to a website with the domain name "tryradiantrevivetoday.com", through which consumers are prompted to purchase and the site makes available for purchase a product named "REVIVE Repair & Release Cream" which is likewise confusingly similar to Ré Vive's Ré Vive Products and Trademarks.

84.     Defendants continue to use the mark REVIVE and variations that are similar to Ré Vive Trademarks through use of domain names such as those identified in ¶75 and in connection with the offering of purportedly "free" samples of skincare products that are held out to be the same as, and are in fact confusingly similar in appearance to, the products bearing Ré Vive's RÉ VIVE Mark and other Ré Vive Trademarks.

85.     Upon information and belief, Defendants are using the REVIVE mark and variations that are similar to Ré Vive Trademarks and domain names in connection with goods that are held out to be the same as, and are in fact confusingly similar in appearance to, the products bearing Ré Vive's RÉ VIVE Mark and other Ré Vive Trademarks.

86.    Upon information and belief, Defendants' use of the REVIVE mark and variations similar to Ré Vive Trademarks are intended to capitalize on the goodwill associated with Ré Vive's RÉ VIVE Mark and to mislead the purchasing public into believing Defendants' purportedly "free" samples are authorized, connected with, sponsored, or approved by Ré Vive.

87.    Defendants' use of the REVIVE mark and variations similar to Ré Vive Trademarks, including the use of the domain names identified in ¶75—and use of variant yet confusingly similar domain names—is without permission or license from Ré Vive.

88.    By using the REVIVE mark and variations similar to Ré Vive Trademarks, Defendants are subjecting the reputation and goodwill of Ré Vive in its RÉ VIVE Mark to irreparable injury and harm by reason of acts of Defendants or others over whom Ré Vive has no control.

89.    Indeed, Ré Vive has received directly from the consuming public a significant number of customer complaints concerning the Defendants' sales practices and products.  Ré Vive has also received written notification of consumer complaints filed through the Better Business Bureau (the "BBB") and through a number State Attorneys General, all of which substantiate Ré Vive's allegations of Defendants' continued infringing conduct, described in ¶¶60-88.  These documented complaints show that absent relief Ré Vive will continue to sustain the harm alleged in ¶88.    Illustrative examples of these complaints, in particular, two representative complaints filed with the BBB; two consumer complaints received directly by Ré Vive; and on complaint filed with a State Attorney General,  are attached hereto as Exhibits U and V (the "Consumer Complaints").

90.    Briefly, the consumer complaints identified in ¶89 all contain consumer allegations of fraudulently induced online purchases, effected through websites controlled by

Defendant, as described in ¶¶60-89 *supra*.   According to the Consumer Complaints, upon reaching Defendant's websites, consumers are presented with offers of "free" samples of skincare products bearing the mark REVIVE.  One example of such an online offer can be seen in Exhibit P, which is a printout from Defendant's website with domain name "reviveantiagingcream.net."  The product offered on the website bears the mark REVIVE, which is similar to Ré Vive Trademarks including the RÉ VIVE Mark, and is held out to be an anti-aging cream, which is a similar product description as that of Ré Vive's Ré Vive Moisturizing Renewal Cream, an image of which is shown below:

Content excerpted from: https://reviveskincare.com/collections/moisturizers



91.     As evidenced by the Consumer Complaints, numerous consumers accept Defendant Digby's online offers for purportedly "free" samples, and agree to incur a relatively small fee for shipping, around $5.  Consumers typically receive the purportedly free samples within a reasonable time.  However, after receiving the ordered samples, Defendant Digby begins to charge consumers much higher amounts, for hundreds of dollars per month, for the alleged purchase of larger quantities of Defendant Digby's products, effectively converting—

without customer permission—what are free sample orders into an expensive continuity program.  As seen in Exhibit U, Defendant Digby's unauthorized charges are effected through the complaining consumers' credit cards.  Through its scheme, Defendants exact vast amounts of money from unsuspecting consumers to effect a forced sale of unwanted quantities of Defendant Digby's products.

92.    As evidenced by the Consumer Complaints, upon becoming aware of Defendant Digby's predatory sales tactics, several consumers complain either directly to Ré Vive Ré Vive, or by addressing their written complaints to consumer protection agencies such as the Better Business Bureau or State authorities, including State Attorneys General.

93.    As evidenced from the fact that the Consumer Complaints are addressed to or name Ré Vive as the counterparty to these unauthorized transactions—and are wholly silent as to the real counterparty, Defendant Digby—the mark REVIVE which Defendant uses in connection with its scheme is confusingly similar to Ré Vive's Ré Vive Trademarks.

94.    In addition, Defendant Digby makes certain representations about its products which, on information and belief, do not accurately represent the quality and nature of its products and thus create a risk of misleading the consuming public.  For example, Defendant Digby represents that its products are "certified organic."  To make and substantiate such a claim, cosmetics and skincare product sellers must be able to demonstrate that their products meet the standards and criteria for "certified organic" cosmetics and skincare products, as set forth by the Food and Drug Administration ("FDA").  On information and belief, Defendant Digby fails to show anywhere on its products, its product packaging, any product inserts, or on any websites through which it markets, that its products in fact meet the criteria set forth by the FDA required for a seller to legitimately represent that its products are "certified organic."  By

31

way of further example, Defendant Digby's represents that its products contain "active ingredients known to stimulate collagen synthesis, while increasing moisture retention, helping your skin to appear radiant and youthful, leav[ing] your skin feeling nourished, smooth and ageless." However, on information and belief, Defendant Digby's moisturizing products contain ingredients that do not remain combined, and upon application to facial skin, these moisturizing products possess a grainy texture and leave a film on the skin.

95.     By its wrongful acts, Defendants have caused, and unless restrained by the Court, will continue to cause, serious and irreparable injury and damage to Ré Vive and to the goodwill associated with its RÉ VIVE Mark and the Ré Vive Products and brand. These wrongful acts have caused, and will continue to cause, grave injury to the public as well.

## COUNT I

**Trademark Infringement and Counterfeiting (15 U.S.C. § 1114)**

96.     Ré Vive adopts and incorporates by reference the allegations of paragraphs 1 through 95 above as if fully set forth herein.

97.     Ré Vive's federally registered RÉ VIVE Mark, RÉ VIVE. GET THE GLOW Mark, and ACNE REPARATIF RÉ VIVE Mark (collectively, the "Ré Vive Trademarks"), and the goodwill of the business associated with the Ré Vive Trademarks are of significant and incalculable value. The Ré Vive Trademarks are highly distinctive and have long been associated in the public mind with cosmetic and skincare products and ingredients of the highest quality that originate exclusively with Ré Vive.

98.     Without Ré Vive's authorization or consent, and despite having express or constructive knowledge of Ré Vive's prior use of and rights in the Ré Vive Trademarks,

Defendant Digby adopted and commenced use of its REVIVE mark in direct competition with Ré Vive's products bearing the Ré Vive Trademarks, including the RÉ VIVE Mark.

99.     Defendants' infringing acts as alleged herein are likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Defendant Digby with Ré Vive, and as to the origin, sponsorship, or approval of Defendant Digby's REVIVE product by Ré Vive, all to the damage and detriment of Ré Vive and its reputation, goodwill, and sales.  Indeed, the fact that the numerous consumer complaints (attached as Exhibits U and V) about Defendants' conduct described in ¶¶89-93 name Ré Vive as the counterparty to the unauthorized transactions identified in these complaints, evidences the actual consumer confusion and harm to Ré Vive's goodwill, reputation, and sales caused by Defendants' actions.

100.    Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

101.    Upon information and belief, Defendants intend to continue its infringing acts, and will continue willfully to infringe the Ré Vive Trademarks, unless restrained by this Court.

102.    Defendants' acts have damaged and will continue to damage Ré Vive, and Ré Vive has no adequate remedy at law.

## COUNT II

### False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a))

103.    Ré Vive adopts and incorporates by reference the allegations of paragraphs 1 through 102 above as if fully set forth herein.

104.    Defendants' adoption and use of the Ré Vive Trademarks, including use of the domain names identified in ¶75 and similarly confusing domain names, is intended to, and is

likely to confuse, mislead, or deceive consumers, the public, and the trade, as to the true origin, source, sponsorship, or affiliation of Defendant Digby's REVIVE product, and is likely to cause such parties to believe in error that the REVIVE product has been made, authorized, sponsored, approved, endorsed or licensed by Ré Vive, or that Defendant Digby is in some way affiliated with Ré Vive, as a result of which Ré Vive and the public have been, and are likely to be further, irreparably damaged.

105.    Defendants' acts constitute a false designation of origin and unfair competition, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

106.    Upon information and belief, Defendants intend to continue its willfully infringing acts unless restrained by this Court.

107.    Defendants' acts have damaged and will continue to damage Ré Vive, and Ré Vive has no adequate remedy under law.

## COUNT III

### False Advertising (15 U.S.C. § 1125(a))

108.    Ré Vive adopts and incorporates by reference the allegations of paragraphs 1 through 106 above as if fully set forth herein.

109.    Defendants' adoption and use of the Ré Vive Trademarks, including use of the domain names identified in ¶75 and similarly confusing domain names, Defendant Digby's offer of purportedly "free" samples of cosmetic and skincare products, and Defendant Digby's representations regarding its products, including but not limited to the representations described in ¶94, constitute unfair competition and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

110.    The above described conduct is intended and is likely to confuse, mislead, or deceive consumers as to the true origin, source, sponsorship, affiliation, nature, quality, and price of Defendant Digby's REVIVE product, and is likely to cause such parties to believe in error that the REVIVE product has been made, authorized, sponsored, approved, endorsed or licensed by Ré Vive, or that the Defendants are in some way affiliated with Ré Vive, as a result of which Ré Vive and the public have been, and are likely to be further, irreparably damaged.

111.    Defendants have known or should have known that their statements were and continue to be false or likely to mislead.

112.    As an actual and proximate result of Defendants' willful and intentional actions, Ré Vive has suffered damages in an amount to be determined at trial, and unless Defendants are enjoined, Ré Vive will continue to suffer irreparable harm and damage to its business, reputation, and goodwill.

113.    Upon information and belief, Defendants intend to continue its willfully infringing acts unless restrained by this Court.

114.    Defendants' acts have damaged and will continue to damage Ré Vive, and Ré Vive has no adequate remedy under law.

## COUNT IV

### Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d))

115.    Ré Vive adopts and incorporates by reference the allegations of paragraphs 1 through 114 above as if fully set forth herein.

116.    Defendant Digby has registered or used the domain names identified in ¶75 with a bad faith intent to profit from the Ré Vive Trademarks.   The Ré Vive Trademarks were

distinctive at the time Defendant Digby registered its domain names.  Defendant's domain names are confusingly similar to Ré Vive Trademarks.

117.    Defendant Digby's acts constitute a violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d) ("Anti-Cybersquatting Consumer Protection Act" or "ACPA").

118.    Ré Vive has been and likely will continue to be injured by Defendant Digby's violation of the ACPA until the domain names are transferred to Ré Vive RV Skincare, owner of the Ré Vive Trademarks.

## COUNT V

### Trademark Infringement Under New York Common Law

119.    Ré Vive adopts and incorporates by reference the allegations of paragraphs 1 through 118 above as if fully set forth herein.

120.    Ré Vive owns all right, title, and interest in and to the Ré Vive Trademarks, including the RÉ VIVE Mark, including all common law rights in such marks.

121.    Defendants' uses of the REVIVE mark are colorable imitations of Ré Vive Trademarks, which are likely to cause confusion, or cause mistake or to deceive consumers.

122.    The aforesaid acts of Defendants constitute trademark infringement in violation of the common law of the State of New York.

123.    Upon information and belief, by its acts, Defendants have made and will make substantial profits and gains to which it is not in law or equity entitled.

124.    Upon information and belief, Defendants intend to continue its willfully infringing acts unless restrained by this Court.

125.    Defendants' acts have damaged and will continue to damage Ré Vive, and Ré Vive has no adequate remedy under law.

## COUNT VI

### Unfair Competition Under New York Common Law

126.     Ré Vive adopts and incorporates by reference the allegations of paragraphs 1 through 125 above as if fully set forth herein.

127.     Defendants' adoption and use of the REVIVE mark, including use of the domain names described in ¶75, is intended to, and is likely to confuse, mislead, or deceive consumers, and the public as to the true origin, source, sponsorship, or affiliation of Defendants' Ré Vive Products, and is likely to cause such parties to believe in error that the Ré Vive Products have been made, authorized, sponsored, approved, endorsed or licensed by Ré Vive, or that Defendants are in some way affiliated with Ré Vive, as a result of which Ré Vive and the public have been, and are likely to be further, irreparably damaged.

128.     Defendants' aforesaid acts constitute a false designation of origin and unfair competition, in violation of the common law of the State of New York.

129.     Defendants' acts have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to the business, reputation and goodwill that Ré Vive enjoys in its registered Ré Vive Trademarks, and to the public, for which Ré Vive has no adequate remedy at law.

130.     Upon information and belief, such acts and injury will continue unless enjoined by this Court.

### PRAYER FOR RELIEF

WHEREFORE, Ré Vive RV Skincare prays for judgment against Defendants as follows:

131.     Finding that (i) Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114); (ii) Defendant has violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (iii)

37

Defendant has violated Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)); (iv) Defendant has violated Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); and (v) Defendants have engaged in trademark infringement and unfair competition under the common law of New York.

132.    Granting an injunction preliminarily and permanently restraining and enjoining Defendants, their officers, agents, affiliates, employees and attorneys, and all those persons or entities in privity or acting in concert with them, and each and all of them, from:

> (a) using the mark REVIVE or any term confusingly similar thereto as a part of a trademark or service mark alone or in combination with other words, names, or marks in connection with selling, offering or advertising of any goods or services;
>
> (b) using the mark REVIVE or any other names or marks confusingly similar to Ré Vive Trademarks in connection with any business;
>
> (c) holding itself out as the owner of a company authorized to use a mark confusingly similar to Ré Vive Trademarks, including, but not limited to, REVIVE, RÉ VIVE, RÉ VIVE. GET THE GLOW, or ACNE REPARATIF RÉ VIVE;
>
> (d) performing any actions or using any words, names, or marks which are likely to cause confusion, to cause mistake or to deceive, or to otherwise mislead the trade or public into believing that Ré Vive RV Skincare and Defendant Digby are one and the same or are in some way connected; or that Ré Vive is a sponsor of Defendant; or that Defendants are in some manner affiliated or associated with or under the supervision or control of Ré Vive; or that the goods of Defendants originate with Ré Vive or are offered with the approval,

consent or authorization, or under the supervision of Ré Vive; or are likely in any way to lead the trade or the public to associate Defendants with Ré Vive;

(e) using any trade practices whatsoever including those complained of herein, which tend to compete unfairly with or injure Ré Vive's business or Ré Vive Trademarks and the goodwill attached thereto; or

(f) otherwise competing unfairly with Ré Vive in any manner.

133.   Directing that Defendants be required to deliver up for destruction, at their own expense, all stationery, business forms, signs, advertisements, brochures, promotional materials, and other written or electronic materials which bear the REVIVE mark, or any marks confusingly similar to Ré Vive Trademarks, together with all means and materials for making or reproducing the same.

134.   Directing such other relief as the Court may deem appropriate to prevent the public from deriving any erroneous impression that any product at issue in this case that has been manufactured, imported, advertised, marketed, promoted, supplied, distributed, offered for sale or sold by Defendants, has been authorized by Ré Vive, or is related to or associated in any way with Ré Vive or its products, or vice versa.

135.   Directing that the domain names described in ¶75, as well as any other confusingly similar domain names used by Defendants in connection with their activities, be transferred to Ré Vive RV Skincare.

136.   Directing Defendants to cease and desist from registering new domain names that contain the word "revive" or "rvskincare."

137.    Directing that Defendants account for and pay over to Ré Vive all profits realized by its wrongful acts and directing that such profits be trebled in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117.

138.    Awarding Ré Vive statutory damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117.

139.    Awarding Ré Vive its actual damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117.

140.    Awarding Ré Vive enhanced, treble, or punitive damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117, or other law.

141.    Awarding Ré Vive its costs and attorney's fees and investigatory fees and expenses to the full extent provided for by the Lanham Act.

142.    Awarding Ré Vive pre-judgment and post-judgment interest on any monetary award made part of the judgment against Defendants.

143.    Awarding Ré Vive such additional and further relief as the Court deems just and proper.

## JURY DEMAND

Ré Vive demands a trial by jury on all issues so triable.

Respectfully submitted,

Date: September 14, 2018                S/ *Scott I. Forman*
                                        Maria A. Scungio (Reg. #2592871)
                                        Scott I. Forman (Reg. #5089339)
                                        WOLF, GREENFIELD & SACKS, P.C.
                                        405 Lexington Avenue
                                        New York, NY  10174
                                        212.697.7890 Phone
                                        617.646.8646 Fax
                                        mscungio@wolfgreenfield.com
                                        sforman@wolfgreenfield.com

                                        Hunter D. Keeton
                                        (*pro hac vice* motion to be filed)
                                        WOLF, GREENFIELD & SACKS, P.C.
                                        600 Atlantic Avenue
                                        Boston, MA 02210
                                        617.646.8000 Phone
                                        617.646.8646 Fax
                                        hkeeton@wolfgreenfield.com