```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
RV SKINCARE BRANDS LLC,                                        :
                                                               :
                                        Plaintiff,             :
                                                               :
                   -against-                                   :
                                                               :
                                                               :
DIGBY INVESTMENTS LIMITED,                                     :
QUICK BOX, LLC, and the Internet Domain                        :
Names GetReviveSkin.com, et al.,                               :
                                                               :
                                        Defendants.            :
-------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/24/2019

18-CV-8411-VEC

**OPINION AND ORDER**

VALERIE CAPRONI, United States District Judge:

Plaintiff RV Skincare Brands LLC ("Ré Vive") commenced this action against Digby Investments Limited ("Digby"), several internet domain names ("Domain Defendant"), and Quick Box, LLC ("QuickBox") for trademark infringement, counterfeiting, and unfair competition. *See* Am. Compl. (Dkt. 22) ¶¶ 104–122, 127–138. Defendant QuickBox moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), and the parties engaged in jurisdictional discovery. For the reasons discussed below, Defendant QuickBox's motion to dismiss for lack of personal jurisdiction is DENIED.

## I. FACTUAL BACKGROUND

Plaintiff is a cosmetics and skincare products company that owns the trademarks "RÉ VIVE," "RÉ VIVE. GET THE GLOW," and "ACNE REPARATIF RÉ VIVE" ("Ré Vive Marks"). *See* Am. Compl. (Dkt. 22) ¶¶ 41–44. Plaintiff has allegedly used the Ré Vive Marks in commerce for over twenty years. *Id.* ¶¶ 50–51. It accuses Defendants of using the Ré Vive Marks or confusingly similar marks to sell counterfeit cosmetics. *Id.* ¶¶ 88–89.

1

QuickBox, the only defendant to have appeared in this case thus far, is a Colorado-based company[1] that provides a multitude of services related to the sale and distribution of cosmetics, among other products. Adele Dep. (Dkt. 71-9) at 58. QuickBox sells generic cosmetics, in wholesale quantities, to businesses that market and sell those products under their own brand names. *Id.* at 17; Dkt. 71-1 at 2–4. According to QuickBox, its business clients choose how to label and promote QuickBox's "stock" cosmetics. Adele Dep. (Dkt. 71-9) at 18. In essence, QuickBox's clients are retailers that create and market different brands to sell the same underlying product. *Id.*

QuickBox's business model is as follows: a retail customer orders product from QuickBox's client; the client communicates the order to QuickBox; QuickBox affixes the client's label to the product, packages the product, applies postage and shipping labels, and hands the package to a delivery service. *Id.* at 58. QuickBox does not market to consumers. Instead, it advertises its fulfillment-related services on-line to retailers. Dkt. 71-1 at 2–4. QuickBox's website claims that it can successfully fulfill orders to "48 states in about 3 to 4 business days." Dkt. 71-8 at 3.

In April 2018, Plaintiff allegedly became aware that fifteen different e-commerce websites were selling skincare products bearing the mark "RÉVIVE" and variations confusingly similar to the Ré Vive Marks. Am. Compl. (Dkt. 22) ¶¶ 68, 70–74. Plaintiff reportedly received consumer complaints regarding the Domain Defendants' sales practices and skincare products bearing the mark "RÉVIVE" or variations thereof. *Id.* ¶ 93. Plaintiff alleges that Defendant Digby registered the fifteen domain names to advertise and sell skincare products that infringe the Ré Vive Marks. *Id.* ¶ 69.

---

[1] QuickBox's principal place of business is Colorado, where it is incorporated. Dkt. 71-6 at 2; Dkt. 71-8 at 3

2

On July 24, 2018, Plaintiff's investigator placed an order from www.lereviva.com, a Domain Defendant, for "Le Reviva Ageless Face Crème" and "Le Reviva Ageless Eye Serum." Jackson Decl. (Dkt. 72). When the products arrived, the return address on the shipping label was "Fulfillment Center, 11661 East 45th Avenue Suite C, Denver Co 80239," which is QuickBox's address. *Id.*, Ex. 1. Based on those facts, Plaintiff commenced this action, alleging that QuickBox fulfills orders for infringing skincare products that bear the label "LE RÉVIVA" or "LE RÉVIVE" on behalf of Digby and the Domain Defendants. Am. Compl. (Dkt. 22) ¶ 100.

During jurisdictional discovery, Plaintiff learned that QuickBox had shipped nearly 14,000 allegedly infringing products into New York. Dkt. 71-10 at 2. QuickBox admits that from November 2017 to March 2019, it shipped 13,866 packages into New York containing skincare products bearing the mark "RÉ VIVE" or variations thereof for three clients: Ontario, TreMarketing, and Khal Worldwide. Adele Dep. (Dkt. 71-9) at 13–14. Those products included collagen serums and moisturizing creams that used "RÉ VIVE" or variations thereof as part of their name or branding. *Id.* at 21–22. QuickBox's Colorado address was the return destination for all of the products. *Id.* at 115–116. QuickBox processed approximately 160 returns out of the 13,866 allegedly infringing products that it shipped to New York consumers. *Id.* at 23–24; Dkt. 71-10 at 2. While it did not market or sell its skincare products directly to consumers in New York, QuickBox contracted with Ontario, TreMarketing, and Khal Worldwide to ship the products into New York. Adele Dep. (Dkt. 71-9) at 13–14. QuickBox denies having entered into any such agreement with co-defendant Digby. *Id.* at 12.

## II. DISCUSSION

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Plaintiff has the burden of demonstrating personal jurisdiction. *Troma Entm't, Inc. v. Centennial Pictures Inc.*,

3

729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). "[W]hen the issue of personal jurisdiction 'is decided initially on the pleadings and without discovery, the plaintiff need show only a prima facie case.'" *King Cty., Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 313 (S.D.N.Y. 2011) (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984)). Because the parties have completed jurisdictional discovery, the "plaintiff['s] *prima facie* showing . . . must include an averment of facts that, if credited by [the trier-of-fact], would suffice to establish jurisdiction over the defendant." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010); *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). At this stage and in this posture, "[c]onclusory allegations are insufficient." *King Cty.*, 769 F. Supp. 2d at 313 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

A two-step analysis is used to determine whether this Court can exercise "personal jurisdiction over a non-domiciliary in a case involving a federal question." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Chloé*, 616 F.3d at 163). The first step is to determine whether a defendant's actions come within the reach of New York State's long-arm statute, N.Y. C.P.L.R. § 302(a). *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). If so, the second step is to determine whether exercising personal jurisdiction comports with the Due Process Clause. *Chloé*, 616 F.3d at 164.

### A. New York State's Long-Arm Statute

By contracting to supply goods to persons in New York, QuickBox became subject to New York's long-arm statute. *See* C.P.L.R. § 302(a). Section § 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an

4

agent: transacts any business within the state or contracts anywhere to supply goods or services in the state." *Id.*; *Chloé*, 616 F.3d at 164. Section § 302(a) has two elements: "(1) [t]he defendant must have 'transacted business' within the state, and (2) [the cause of action] must 'arise from' that business activity." *Licci ex rel. Licci v. Lebanese Canadian Bank, Sal*, 732 F.3d 161, 168 (2d Cir. 2013). There is no genuine dispute as to the second prong.[2] As to the first prong, QuickBox claims that its activities were not purposely directed at New York because it did not choose the recipients of its shipments. The Court disagrees with QuickBox's spin on the facts. By contracting to supply products to its clients' customers and then causing thousands of such products to be delivered to customers in New York, QuickBox has availed itself of the privilege of conducting business within the state, thereby subjecting itself to both the benefits and burdens of New York's laws. *See Chloé*, 616 F.3d at 169.

The sufficiency of a defendant's contacts with the forum is measured by "the totality of the defendant's activities within the forum." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *Zottola v. AGI Group, Inc.*, 882 N.Y.S.2d 445, 447 (2d Dep't 2009) (citing *Longines-Wittnauer Watch Co. v. Barnes & Reinecke*, 15 N.Y.2d 443, 457 n.5 (1965)). "A showing that a party is transacting business requires only a minimal quantity of activity, provided that it is of the right nature and quality." *Chanel, Inc. v. Doubinine*, 2008 WL 4449631 at 2* (E.D.N.Y. 2008) (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). As the New York Court of Appeals has held, the existence of a contract

---

[2] QuickBox's contacts with New York, consisting of shipping allegedly infringing products to customers in New York and the sale of those infringing products to its retail clients, is precisely the activity underlying Plaintiff's trademark infringement claims. That QuickBox may have done so on behalf of clients other than co-defendant Digby is immaterial to the question of personal jurisdiction. The Court therefore concludes that Plaintiff has shown the requisite nexus between its claims and QuickBox's conduct in New York. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (citation omitted).

to ship products into New York is sufficient to establish personal jurisdiction in actions related to injuries caused by those products. *See Longines-Wittnauer*, 15 N.Y.2d at 465–466.

Notably, Section 302(a)(1) is a single-act statute. *Deutsche Bank Sec., Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 71 (2006). Courts have consistently held that proof of one purposeful transaction in New York is sufficient to trigger Section 302(a)(1), as long as there is a "substantial relationship between the transaction and the claim asserted." *Chloé*, 616 F.3d at 170 ("A single act of shipping a [good] might well be sufficient, by itself to subject [a nondomiciliary] to the jurisdiction of a New York court under section 302(a)(1)."); *see also Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("Section 302 'is a single-act statute requiring but one transaction-albeit a purposeful transaction-to confer jurisdiction in New York.'" (quoting *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17 (1970))); *Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F. Supp. 433, 436 (S.D.N.Y. 1996) (finding that defendants' shipment of allegedly infringing goods into New York was sufficient to establish personal jurisdiction because "those shipments were purposeful and substantially related to plaintiffs' claim of trademark infringement").

In this case, QuickBox has repeatedly availed itself of the privilege of doing business in New York by entering into and performing contracts to ship thousands of products into the state. QuickBox maintains its own e-commerce website and social media platforms, advertising its ability to provide fulfillment services to clients that can "reach every home in the U.S.," a claim that obviously includes homes in New York. Dkt. 71-8 at 3. No doubt in part because of QuickBox's advertised ability to reach large markets such as New York, QuickBox was able to enter into contracts with Ontario, TreMarketing, and Khal Worldwide to supply goods into New York and elsewhere. *See Chloé*, 616 F.3d at 171 ("[T]hat [Defendant's] business attempted to

6

serve a nationwide market does not diminish any purposeful contacts with Queen Bee's New York consumers."). Second, it is undisputed that QuickBox has shipped at least 13,866 allegedly infringing products to New York consumers over a period of at least two years as part of its contractual obligations to those three companies. Adele Dep. (Dkt. 71-9) at 13–14; Dkt. 71-10 at 2. Thus, far from a single transaction, which would alone likely be sufficient, QuickBox is party to at least three contracts pursuant to which it has supplied allegedly infringing goods to New York consumers on thousands of occasions.

QuickBox argues that fulfillment companies should not be subject to personal jurisdiction wherever they happen to ship an infringing product. Even if that argument were meritorious, QuickBox appears to be far more than simply a fulfillment center. The record shows that QuickBox plays multiple critical roles in the infringement process. Not only does QuickBox supply the infringing product itself, it also affixes the infringing label (although purportedly provided by third-parties), packages the product, and places it with a carrier to be delivered. Adele Dep. (Dkt. 71-9) at 58. Thereafter, QuickBox is also responsible for processing any returns. *Id.* at 23–24. Thus, even assuming the correctness of QuickBox's legal principle,[3] it is factually apposite to this case.

---

[3] The proposition that fulfillment companies are not subject to personal jurisdiction in a state where their shipment(s) cause harm is a dubious one. "Under C.P.L.R. § 302(a)(3)(ii), a court in New York may exercise jurisdiction over a non-domiciliary when the defendant (1) committed a tortious act outside New York, (2) that causes injury within New York State, and (3) the defendant expects or should reasonably expect the act to have consequences in the state and (4) derives substantial revenue from interstate or international commerce." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467 (S.D.N.Y. 2008). Certainly no one would dispute that a fulfillment service would be subject to personal jurisdiction in a destination state if its shipment, for instance, contained dangerous chemicals that were negligently packaged and caused injury to the recipient.

For that reason, QuickBox's actions may also subject it to jurisdiction pursuant to § 302(a)(3)(ii). As courts have recognized, trademark claims may be regarded as a type of tort. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23–24 (2d Cir. 2004). If QuickBox commits trademark infringement outside of New York, such as by affixing infringing labels, it will be subject to New York's long-arm statute if it is reasonably foreseeable that its actions would cause consumer confusion in New York. *See Energy Brands*, 571 F. Supp. 2d at 467.

7

In sum, QuickBox's conduct brings it within the ambit of C.P.L.R. § 302(a)(1) because it supplied goods into New York (albeit at the direction of third parties) that are now the subject of Plaintiffs' infringement claims.

**B. Due Process Clause**

The Due Process Clause of the Fourteenth Amendment forbids the exercise of personal jurisdiction unless the non-resident defendant has purposefully created sufficient minimum contacts with the forum state "such that maintenance of the suit [would] not offend traditional notions of fair play and substantial justice." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 149 (2d Cir. 2019). Because QuickBox has knowingly and intentionally facilitated the sale and distribution of thousands of products into New York, an action related to the alleged impact of those products may be maintained in New York without violating QuickBox's due process rights.

**1. QuickBox has Sufficient Minimum Contacts in New York**

To satisfy the "minimum contacts" analysis, the Plaintiff must show that Defendant "purposefully availed itself of the privilege of doing business in [New York]." *Licci ex. rel. Licci*, 732 F.3d at 170. "If personal jurisdiction is proper under the C.P.L.R. [§ 302(a)], it is ordinarily proper under the Constitution." *Verragio, Ltd. v. SK Diamonds*, 2017 WL 1750451 at 5* (S.D.N.Y. 2017). "[I]t would be unusual . . . if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have purposefully availed itself of the privilege of doing business in the forum." *Licci ex rel. Licci*, 732 F.3d at 170. Thus, for the same reasons that QuickBox's actions fall within the scope of New York's long-arm statute, QuickBox has satisfied the minimum contacts requirement.

8

QuickBox advertised its ability to facilitate the delivery of products into New York and has entered into contracts for that purpose. Dkt. 71-8 at 3; Adele Dep. (Dkt. 71-9) at 14. While QuickBox makes much of the fact that it has no control over the destination addresses on the packages that it distributes, QuickBox has created a business that capitalizes on its ability to send products into New York (as well as other states). Def. Mem. of Law (Dkt. 41) at 7. Certainly QuickBox would be a much less attractive fulfillment service if it could not or would not fulfill orders that originate with customers who are in New York. By entering into contracts to send product into New York, QuickBox has intentionally availed itself of the privilege of doing business in this state.

Second, QuickBox has knowingly sent 13,866 relevant products into New York. Adele Dep. (Dkt. 71-9) at 13–14; Dkt. 71-10 at 2.[4] As the Second Circuit has held, it is beyond argument that "actually sending items to New York" is conduct that is "purposefully directed toward" the state. *See Chloé*, 616 F.3d at 171. While QuickBox attempts to distinguish itself as a fulfillment service, rather than a retailer operating a point of sale, that distinction is immaterial to the due process analysis. The due process analysis is focused on the purpose behind the defendant's actions; here, there is no dispute that QuickBox knew that it was affixing shipping labels with New York addresses onto its packages and that QuickBox specifically intended for those packages to reach consumers in New York. Adele Dep. (Dkt. 71-9) at 14, 58; Dkt. 71-10 at 2. Where a specific customer happens to reside is a fortuitous circumstance for virtually every

---

[4] Although the parties have quantified only the amount of product that Plaintiff alleges to be infringing, other evidence in the record suggests that QuickBox has likely sent substantially more product into New York than just the approximately 14,000 packages that may contain products that infringe Plaintiff's marks. Because QuickBox is a fulfillment company for lots of different products, it seems highly likely that other of its clients also have customers who reside in New York and that QuickBox has sent additional products into New York for those clients.

retail sale—the "purposeful availment" element is nonetheless satisfied if the business, after learning where the customer resides, decides to send a product into that jurisdiction.

QuickBox also attempts to obfuscate by repeatedly claiming that it did not "ship[] or otherwise distribute any skincare products into New York." *See, e.g.*, Reply Br. (Dkt. 74) at 3. That is sophistry. On the record before the Court, it is undisputed that QuickBox provides a stock skincare product, affixes a branding label, packages the product for shipping, applies a shipping label, and gives the package to a delivery service—and it did so for thousands of New York-bound packages. Adele Dep. (Dkt. 71-9) at 58. In other words, QuickBox's conduct is the dictionary definition of "ship or otherwise distribute." QuickBox's attempt to limit the scope of "shipping" to personal delivery by a mailman or a courier is just silly. *See Chloé*, 616 F.3d at 162 (predicating personal jurisdiction on employee's use of FedEx to "ship" allegedly counterfeit bag).

QuickBox cites inapposite extra-circuit authority in support of its position. Def. Mem. of Law (Dkt. 41) at 8–9 (citing *LG Corp. v. Huang Xiaowen*, No. 16-CV-1162, 2017 WL 2504949, at *4 (S.D. Cal. June 8, 2017) and *Medline Indus., Inc. v. Strategic Commercial Sols., Inc.*, 553 F. Supp. 2d 979, 987–88 (N.D. Ill. 2008)). The *Medline Industries* case pertained to a call center that did not ship any products into Illinois, the state in which the plaintiff filed suit. 553 F. Supp. 2d at 987. The *LG Corp.* case is irrelevant because it relies on Ninth Circuit precedent, which uses a different test for personal jurisdiction than courts in this Circuit. *Compare Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008) ("This was a one-time contract for the sale of a good that involved the forum state only because that is where the purchaser happened to reside, but otherwise created no 'substantial connection' or ongoing obligations there."), *with Chloé*, 616 F.3d at 170 (explaining that a single act of shipping a counterfeit bag might be sufficient,

standing alone, to subject defendant to the jurisdiction of a New York court under section 302(a)(1)) *and D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ( "[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements.").

Under the law of this Circuit, QuickBox's actions undoubtedly satisfy the minimum contacts required by the Due Process Clause.

### 2. Exercising Personal Jurisdiction over Defendant QuickBox is Reasonable

The exercise of personal jurisdiction over QuickBox does not "offend traditional notions of fair play and substantial justice." *Chloé*, 616 F.3d at 172–73. Once Plaintiff has established the existence of minimum contacts, Defendants must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Metro. Life Ins.*, 84 F.3d at 568. To determine whether a compelling case exists, the Court considers five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial[] system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies." *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (internal quotations and citations omitted). "[D]ismissals resulting from the application of the reasonableness test should be few and far between." *Metro. Life Ins.*, 84 F.3d at 575.

QuickBox has not made a compelling showing that exercising personal jurisdiction over it would be unreasonable. As to the first factor, the Court acknowledges that there will be some burden on QuickBox to litigate in New York, but QuickBox's "generalized complaints of inconvenience . . . do not add up to 'a compelling case that . . . would render jurisdiction

unreasonable.'" *Chloé*, 616 F.3d at 173 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The second factor favors the Plaintiff because New York has a strong interest "in providing effective means of redress for its residents," and Plaintiff, although a Delaware limited liability company, has its principle place of business in New York. The final two factors are at best neutral for QuickBox—the parties have already completed some discovery in this district, and the Court is already familiar with the underlying facts, an efficiency that would be lost if this case were dismissed on account of inconvenience to Defendant. Because none of the factors compels dismissal, the Court concludes that exercising personal jurisdiction over Defendant QuickBox does not violate "traditional notions of fair play and substantial justice" and does comport with the Due Process Clause.

### III. CONCLUSION

For the foregoing reasons, Defendant QuickBox's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rule of Civil Procedure is DENIED. The Clerk of Court is respectfully directed to terminate docket entry 38.

Because Plaintiff appears to have discovered additional defendants and has previously expressed an intent to add more parties, Dkt. 27, Plaintiff is given leave to file a second amended complaint, no later than **August 9, 2019**. Any amended pleading must be accompanied by a redlined version reflecting all of the changes. Any new defendant must be promptly served.

The parties are directed to appear on **September 13, 2019, at 10:00 A.M.** for a status conference to set a discovery schedule. The parties must submit a joint letter, no later than **September 6, 2019**, explaining anticipated next steps and proposing a deadline for all remaining fact discovery and any expert discovery.

**SO ORDERED.**

**Date: July 19, 2019**
       **New York, New York**

_____
      **VALERIE CAPRONI**
      **United States District Judge**