# KRONENBERGER ROSENFELD

March 16, 2020

Hon. Valerie E. Caproni
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: _03/24/2020_ |



**VIA ECF**

**RE:**   ***RV Skincare Brands LLC v. Digby Investments Limited, et al.*, Civil Action No.: 1:18-cv-08411-VEC; Defendant Khal Worldwide's Letter Motion Objecting to Additional Deposition Questions per Court's March 13, 2020 Order**

Dear Judge Caproni:

We represent Defendant Khal Worldwide ("Khal") in the above-referenced action. Pursuant to the Court's March 13, 2020 order [D.E. No. 136], Khal hereby submits limited objections to Plaintiff RV Skincare Brands LLC's additional deposition questions.

In a joint letter to the Court on March 5, 2020 [D.E. 134] and at an in-person status conference on March 13, 2020, counsel for Plaintiff argued that Khal's designated representative for Khal's Rule 30(b)(6) deposition was unable to answer certain questions related to the designated topics listed in the deposition notice. (Exhibit A, Rule 30(b)(6) deposition notice.) Khal's counsel disagreed, noting that counsel for Plaintiff simply did not like Khal's truthful answers to the questions. As a result, the Court ordered that, "Plaintiff must provide, no later than the close of business on March 13, 2020, a list of written questions to Khal Worldwide, which may either file a letter motion objection to such questions by March 16, 2020, or provide sworn answers by March 26, 2020."

Importantly, Khal has not conducted any business since July 2018 and dissolved as a company in December 2019. Reviewing archived materials and educating the designated representative in preparation for the original Rule 30(b)(6) deposition on February 5, 2020 was a burden to Khal. Requiring Khal to respond to a new set of questions beyond the scope of Plaintiff's original Rule 30(b)(6) topics would further burden Khal as a result of Plaintiff's own discovery shortcomings.

On March 13, 2020, Plaintiff provided Khal with a list of 27 written questions (Exhibit B). While virtually all of the 27 questions are objectionable for various reasons, Khal will provide sworn answers to 11 of the written questions in an effort to cooperate in the discovery process (questions 1–8 and 23–26). However, Khal objects to answering 16 of the written questions, which are fundamentally objectionable, for the following two reasons.

First, most of these questions are unrelated to the deposition topics identified in Plaintiff's original deposition notice. Plaintiff should not be able to expand its discovery efforts after the close of discovery with new deposition topics. Allowing such questions would be unfair, prejudice Khal, and would undermine the Court's March 13 order, which was to allow Plaintiff to get answers to

Hon. Valerie E. Caproni
March 16, 2020
Page **2** of **2**

questions on listed deposition topics that the deponent was allegedly unable to answer due to lack of reasonable preparation.

Second, Khal objects to Questions Nos. 10–17, 27, as those questions were not even asked during the original deposition of Khal. Again, the purpose of the Court's March 13, 2020 order was to enable Plaintiff to get answers to deposition questions where Khal's representative was inadequately prepared at the original deposition. Because Questions Nos. 10–17, 27 were not even asked at Khal's original deposition, Plaintiff should not be permitted a second bite at the apple now.

Notably, for Questions Nos. 12, 16, 17, 19, 21, and 22, Plaintiff appears to have taken various company names from the deposition transcript of co-defendant Quick Box, which occurred concurrently with the Khal deposition (at Plaintiff's choice). Plaintiff did not ask Khal about these companies at Khal's deposition. Now, Plaintiff realizes that its prior discovery was deficient, and Plaintiff is seeking answers to questions it never asked Khal regarding deposition topics that were never listed in its deposition notice to Khal.

Plaintiff's list of questions is another example of Plaintiff trying to get an unfair advantage after failing to engage in timely discovery and unduly burdening a dissolved company. The following chart summarizes the objections above:

| | |
|---|---|
| Object as Unrelated to 30(b)(6) Deposition Topics | 9–22 |
| Object Because Not Asked at Deposition | 10–22, 27 |
| Examples of Integration of New Information into Questions | 12–14, 16, 17, 19, 21, 22, 27 |

For the foregoing reasons, Khal respectfully requests that the Court strike the above objectionable questions by Plaintiffs, and thereafter Khal will respond to Plaintiff on questions 1–8 and 23–26.

We thank the Court for its consideration.

Sincerely,

/s/ Karl S. Kronenberger

Karl S. Kronenberger

Because Khal's relationship with Sapphire Equities was raised at the original deposition, and Khal appears to have no objection to answering at least some questions about the remaining entities, J Rock Inc. and Rain Solutions, the Court sees no reason to allow Plaintiff to ask Questions 1-8 and 23-26 but not the remainder.  Khal also has not adequately explained why those additional questions are likely to cause undue burden, or even the extent of the burden in terms of the volume of documents that must be reviewed or the amount of time that must be expended.  Accordingly, Khal is directed to answer all 27 of the questions, no later than **April 14, 2020**.

The Clerk of Court is respectfully directed to terminate docket entries 137 & 151.

SO ORDERED.                      Date: 03/24/2020

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

RV SKINCARE BRANDS LLC,                        :
                                               :
                        Plaintiff,             :        Civil Action No.: 1:18-cv-08411-VEC
                                               :
V.                                             :
                                               :        **NOTICE OF TAKING OF**
DIGBY INVESTMENTS LIMITED, QUICK               :        **DEPOSITION UPON ORAL**
BOX, LLC, and the Internet Domain Names        :        **EXAMINATION OF DEFENDANT**
GetReviveSkin.com, et al.,                     :        **KHAL WORLDWIDE,**
                                               :        **PURSUANT TO RULE 30(b)(6)**
                        Defendants.            :
------------------------------------------------------- x

**PLEASE  TAKE NOTICE** that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules

of Civil Procedure, Plaintiff RV Skincare Brands LLC ("Ré Vive"), by its undersigned counsel,

will take the deposition of Khal Worldwide ("Khal") commencing on February 5, 2020 at 10:00

a.m. PST, or on such other date and time as may be agreed to by the parties,  at the office of

Kaempfer Crowell, 1980 Festival Plaza Drive, Suite 650, Las Vegas, Nevada 89135. The

deposition will continue from day-to-day thereafter, or at such other time and place as may be

agreed upon by counsel for the parties, until completed.  The deposition will be recorded

stenographically before a court reporter or other person duly authorized by law to administer oaths

and will also be videotaped.  You are invited to cross-examine.

**NOTICE IS FURTHER GIVEN** that, pursuant to Rule 30(b)(6) of the Federal Rules of

Civil Procedure, Khal is required to designate and produce at the deposition those directors,

managing agents, employees, or other persons most qualified to testify on Khal's behalf as to the

subjects of examination specified below.  To the extent that different individuals are the most

qualified to testify, Khal is required to designate and produce for deposition examination each such individual.

Dated: New York, New York
January 24, 2020

Respectfully submitted,

By: */s/ Maria A. Scungio*
Maria A. Scungio
Brian E. Moran
Trevor L. Bradley
ROBINSON & COLE LLP
666 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (212) 451-2900
mscungio@rc.com
bmoran@rc.com
tbradley@rc.com
*Attorneys for Plaintiff RV Skincare Brands
LLC*

**SCHEDULE A**

**DEFINITIONS**

1.      Communication. The term "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      Document. The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

3.      The terms "Khal," "Defendant," "you," or "your" shall mean Defendant Khal Worldwide, together with its agents, representatives, attorneys, assigns, and all persons acting or purporting to act for and/or on its behalf.

4.      The term "Ré Vive" shall mean Plaintiff RV Skincare Brands LLC, together with its agents, representatives, attorneys, assigns, and all persons acting or purporting to act for and/or on its behalf.

5.      The term "Digby" shall mean Defendant Digby Investments Limited, together with its agents, representatives, attorneys, assigns, and all persons acting or purporting to act for and/or on its behalf.

6.      The term "Ontario" shall mean Defendant Ontario Limited, together with its agents, representatives, attorneys, assigns, and all persons acting or purporting to act for and/or on its behalf.

7.      The term "Tre" shall mean Defendant Tre Marketing Internet Ltd., together with its agents, representatives, attorneys, assigns, and all persons acting or purporting to act for and/or on its behalf.

8. The term "Quick Box" shall mean Defendant Quick Box, LLC, together with its agents, representatives, attorneys, assigns, and all persons acting or purporting to act for and/or on its behalf.

9. The term "Domain Name Defendants" shall mean the Domain Name Defendants identified in ¶¶ 14-39 of the Second Amended Complaint.

10. The term "Complaint" shall mean the Second Amended Complaint filed in the United States District Court, Southern District of New York, Civil Action No.: 1:18-cv-08411, dated August 22, 2019.

11. The term "Ré Vive Trademarks" shall mean Ré Vive trademarks RÉ VIVE (U.S. Reg. No. 2,539,403), RÉ VIVE. GET THE GLOW (U.S. Reg. No. 2,875,712), and ACNE REPARATIF RÉ VIVE (U.S. Reg. No. 3,787,890).

12. The term "Ré Vive Products" shall mean Ré Vive's skincare products, including moisturizing renewal creams, neck renewal creams, revitalizing eye masks, firming eye creams, hydrating creams, firming moisture creams, eye renewal serums, skin treatments.

## RULE 30(B)(6) TOPICS OF EXAMINATION

1.      Agreements or contracts with any of the co-defendants, i.e., Digby, Ontario, Tre, Quick Box, and/or any of the Domain Name Defendants.

2.      Operating procedures and/or policies implemented by Khal to prevent trademark infringement and/or counterfeiting.

3.      Any of the co-defendants, i.e., Digby, Ontario, Tre, Quick Box, and/or any of the Domain Name Defendants.

4.      Any of the co-defendants, i.e., Digby, Ontario, Tre, Quick Box, and/or any of the Domain Name Defendants.

5.      Khal's sale, marketing, promotion, packaging and/or labelling of any skincare products utilizing any tradenames or product names that embody or make any use of some variation of "Revive."

6.      Communications with Quick Box Concerning any one or more fulfillment-related services (including labeling, packaging, kitting, order processing, product deliveries, product returns, and warehousing services) that Quick Box has provided or offered to provide to Khal.

7.      Any domain names, websites or URLs utilized (directly or indirectly), sponsored or hosted by Khal to sell, offer, or market any skincare products to consumers that make any use of some variation of "Revive" in the tradename, trademark or product name on the label or packaging of such products or on any website through which you or anyone else offers for sale any such products.

8.      Any domain names, websites or URLs utilized (directly or indirectly), sponsored, or hosted by Khal that make any use of the word "revive" or any variation thereof in any domain name, website address or URL.

5

9.      Khal's direct or indirect involvement in, relationship with or connection to any of the Domain Name Defendants.

10.     Khal's direct or indirect involvement in, relationship with or connection to Digby, Ontario, Tre, and/or Quick Box.

11.     Any of the co-defendants', i.e., Digby, Ontario, Tre, Quick Box, and/or any of the Domain Name Defendants, promotion, advertising, marketing or sales of any skincare products.

12.     Khal's direct or indirect involvement in, relationship with or connection to Rush Remedy Skin Care.

13.     Any consumer complaints or any product returns relating to any skincare products that Khal sells that make any use of some variation of "Revive" in the tradename, trademark or product name on the label or packaging of such products or on any website through which you or anyone else offers for sale any such products.

14.     Any complaints lodged with any Better Business Bureau and/or any other consumer protection agency relating to any skincare products that Khal sells or offers for sale that make any use of some variation of "Revive" in the tradename, trademark or product name on the label or packaging of such products or on any website through which you or anyone else offers for sale any such products.

15.     Ré Vive, the Ré Vive Trademarks, and/or the Ré Vive Products.

16.     Communications to or from Ré Vive.

17.     Any skincare products that Khal offers for sale.

18.     Khal's promotion, advertising, and/or marketing of any skincare products that it offers or offered for sale.

6

19.     Any allegations of fraudulent, misleading, and/or improper inducement of any online purchases of skin care products that make use of some variation of "Revive" in the tradename, trademark or product name on the label or packaging of any such products.

20.     Any "free" trial samples of any skincare products for which customers are charged for the low cost of shipping and then automatically enrolled in monthly product subscription services.

21.     Any investigation and/or due diligence performed by Khal on use of some variation of "Revive" in the tradename, trademark or product name on the label or packaging of any skincare products.

22.     Any alleged trademark infringement, counterfeiting, false advertising, and/or unfair competition claims, complaints, and/or notices that Khal has received from any third party.

23.     Any documents or records relating to each of the subjects or topics identified in item numbers 1-22 above and the location of such documents and records.

24.     Persons possessing personal knowledge of each of the subjects or topics identified in item numbers 1-22 above and their current addresses and contact information.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2020, a copy of the foregoing was served by e-mail on

counsel for Defendants, as follows:

Damon W.D. Wright
GORDON REES SCULLY MANSUKHANI
1101 King Street, Suite 520
Alexandria, VA 22314
dwright@grsm.com

Karl S. Kronenberger
Kronenberger Burgoyne, LLP
150 Post Street
San Francisco, CA 94108
karl@KRInternetLaw.com

*/s/Maria A. Scungio*
Maria A. Scungio

8

Exhibit B

# Robinson+Cole

MARIA A. SCUNGIO

Chrysler East Building
666 Third Avenue, 20th floor
New York, NY 10017
Main (212) 451-2900
Fax (212) 451-2999
mscungio@rc.com
Direct (212) 451-2955

Also admitted in Connecticut

March 13, 2020

**Via Email**  (karl@krinternetlaw.com)

Karl S. Kronenberger, Esq.
Kronenberger Rosenfeld, LLP
150 Post Street, Ste 520
San Francisco, CA 94108

Re:    RV Skincare Brands LLC v. Digby Investments Limited et al.,
       Case No. 1:18-cv-8411-VEC-GWG (SDNY)

Dear Karl:

Enclosed please find RV Skincare's list of written questions to Khal Worldwide, following the Rule 30(b)(6) deposition testimony of Khal Worldwide given on February 5, 2020.  We await receipt of Khal's sworn answers by March 26, 2020.

Sincerely,

Maria A. Scungio
MAS:va

Enclosure
cc:  Kevin J. Harrington, Esq.

Boston  |  Hartford  |  New York  |  Providence  |  Miami  |  Stamford  |  Los Angeles  |  Wilmington  |  Philadelphia  |  Albany  |  New London  |  rc.com

Robinson & Cole LLP

RV Skincare - Questions for Khal Worldwide – March 13, 2020

1.      What total quantity of skincare products (in units) were ordered by Khal Worldwide ("Khal"), or anyone acting or purportedly acting, directly or indirectly, on behalf of Khal or in any representative capacity (including, but not limited to, Sapphire Equities, Rain Solutions or J Rock Inc.), from Quick Box, for each of the following Revive-branded products (Aura Revive, Vero Revive and Reviv Ultimé) from January 1, 2017 to the present?

2.      What total quantity of skincare products (in units) ordered by Khal, or anyone acting or purportedly acting, directly or indirectly, on behalf of Khal or in any representative capacity (including, but not limited to, Sapphire Equities, Rain Solutions or J Rock Inc.), from Quick Box were shipped to customers, for each of the following Revive-branded products (Aura Revive, Vero Revive and Reviv Ultimé) from January 1, 2017 to the present?

3.      How many units of Aura Revive, Vero Revive and Reviv Ultimé skincare products, respectively, were "returned" to Quick Box, from January 1, 2017 to the present?

4.      How much revenue did Khal, or anyone acting or purportedly acting, directly or indirectly, on behalf of Khal or in any representative capacity (including, but not limited to, Sapphire Equities, Rain Solutions or J Rock Inc.), receive, for the sales of the Aura Revive, Vero Revive and Reviv Ultimé branded products respectively, from January 1, 2017 to the present?

5.      What total quantity of JRevive skincare products (in units) were ordered by Khal, or anyone acting or purportedly acting, directly or indirectly, on behalf of Khal or in any representative capacity (including, but not limited to, Sapphire Equities, Rain Solutions or J Rock Inc.), from Quick Box, from January 1, 2018 to the present?

6.    What total quantity of JRevive skincare products (in units) ordered by Khal, or anyone acting or purportedly acting, directly or indirectly, on behalf of Khal or in any representative capacity (including, but not limited to, Sapphire Equities, Rain Solutions or J Rock Inc.), from Quick Box were shipped to customers, from January 1, 2018 to the present?

7.    How many units of JRevive skincare products were "returned" to Quick Box, from January 1, 2018 to the present?

8.    How much revenue did Khal, or anyone acting or purportedly acting, directly or indirectly, on behalf of Khal or in any representative capacity (including, but not limited to, Sapphire Equities, Rain Solutions or J Rock Inc.), receive, for the sales of JRevive branded products, from January 1, 2018 to the present?

9.    For the period January 1, 2017 to the present, what was the business or other relationship of any kind between Khal and Sapphire Equities?

10.   If Sapphire Equities is a third-party company unrelated to Khal, what were the terms of Khal's engagement of Sapphire Equities, to act as an agent for Khal, for each year respectively, from January 1, 2017 to the present?

11.   What were the financial terms contained in any written agreement between Sapphire Equities and Khal, concerning the purchase of goods from Quick Box, from January 1, 2017 to the present?

12.   For the period January 1, 2017 to the present, what was the business or other relationship of any kind between Khal and Rain Solutions?

13.   If Rain Solutions was or is a related company to Khal, please explain the relationship in further detail.

14.     Did or does Khal have knowledge that Rain Solutions was the company that ordered Reviv Ultimé branded skincare products from Quick Box?

15.     If J Rock Inc. was or is a related company to Khal, please explain that relationship in further detail?

16.     Who are/were the contract parties (names, addresses, e-mails, phone nos., etc.) for each of Sapphire Equities, Rain Solutions and J Rock Inc.?

17.     Describe any communications (letters, e-mails, etc.) between Khal and each of Quick Box, Sapphire Equities, or Rain Solutions, from January 1, 2017 to the present.

18.     What actual or apparent authority did Sapphire Equities have relative to Khal and/or dealing with Quick Box?

19.     What actual or apparent authority did Rain Solutions have relative to Khal and/or dealing with Quick Box?

20.      What actual or apparent authority did J Rock Inc. have relative to Khal and/or dealing with Quick Box?

21.     What contracts (written or oral) or relationships do Sapphire Equities, Rain Solutions and J Rock, Inc. each have with Khal and/or Quick Box?

22.     Did Khal, or anyone acting or purportedly acting, directly or indirectly, on behalf of Khal or in any representative capacity (including, but not limited to, Sapphire Equities, Rain Solutions or J Rock Inc.),  have any written contracts, purchase orders, invoices or other contractual agreements with Sapphire Equities, Rain Solutions, J Rock Inc. and/or Quick Box?

3

23.     What monies, if any, were paid directly or indirectly to Khal, or anyone acting or purportedly acting, directly or indirectly, on behalf of Khal or in any representative capacity (including, but not limited to, Sapphire Equities, Rain Solutions or J Rock Inc.), in respect of sales of the various Revive- or -Revive branded skincare products using QB's fulfillment services?

24.     Did Khal, or anyone acting or purportedly acting, directly or indirectly, on behalf of Khal or in any representative capacity (including, but not limited to, Sapphire Equities, Rain Solutions or J Rock Inc.), have any involvement with any other "Revive- or -Revive branded products or other fulfillment house, shops or operations?

25.     Did Khal, or anyone acting or purportedly acting, directly or indirectly, on behalf of Khal or in any representative capacity (including, but not limited to, Sapphire Equities, Rain Solutions or J Rock Inc.), have any involvement in procuring the domain names or setting up websites through which orders were solicited; if not, who did?

26.     Did Khal have any involvement with the Better Business Bureau or other consumer complaints?

27.     When did Khal, or anyone acting or purportedly acting, directly or indirectly, on behalf of Khal or in any representative capacity (including, but not limited to, Sapphire Equities, Rain Solutions or J Rock Inc.), stop dealing with QB, Sapphire Equities, Rain Solutions and J Rock?